10-1639-pr
Alston v. Phillips

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 18th day of April, two thousand twelve.

PRESENT:   JOHN M. WALKER, JR.,
                     CHESTER J. STRAUB,
                     GERARD E. LYNCH,
                                   *Circuit Judges.*

_____

RONALD ALSTON,
                                   *Appellee*,

               v.                                                    No. 10-1639-pr

WILLIAM PHILLIPS, Superintendent,
                                   *Defendant-Appellant.*

_____

FOR APPELLANT:            GEORGIA HINDE, New York, New York.

FOR APPELLEE:             SHARON Y. BRODT, Assistant District Attorney (John M. Castellano, *on the brief*), *for* Richard A. Brown, District Attorney, Queens County, Kew Gardens, New York.

Appeal from the United States District Court for the Eastern District of New York

(Sandra L. Townes, *District Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the district court is AFFIRMED.

Petitioner Ronald Alston appeals the district court's denial of a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Alston is serving a prison term of 35 years to life following convictions by a jury of first- and second-degree robbery in violation of New York Penal Law §§ 160.15(2) and 160.10(1). Although Alston asserted numerous grounds for the writ in the district court, this Court granted a certificate of appealability under 28 U.S.C. § 2253 on the sole issue of whether Alston's trial counsel was constitutionally ineffective for failing to argue that certain testimony implicitly violated Alston's Confrontation Clause rights. We assume the parties' familiarity with the history of this case, which is fully presented in the district court's opinion, Alston v. Phillips, 703 F. Supp. 2d 150, 155-172 (E.D.N.Y. 2010).

Because Alston's claim of ineffective assistance was "adjudicated on the merits in State court proceedings," 28 U.S.C. § 2254(d)(1), see People v. Alston, 307 A.D.2d 1046-47, 763 N.Y.S.2d 764, 765 (N.Y. App. Div. 2d Dep't 2003), and because Alston complains only of legal error, we may only grant the writ if the state adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1). We affirm the denial of the writ because the state court's rejection of Alston's ineffective assistance claim was not an unreasonable application of the

standard for ineffective assistance claims set forth in Strickland v. Washington, 466 U.S. 668 (1984).

Alston was charged with robbing the same Rite Aid in Queens three times in a two-month span in 1997. The first robbery, on the morning of March 15, 1997, was committed by a single man. The second and third robberies, in the morning hours of May 2 and 16, were committed by two men. The jury convicted Alston for the May 2 and 16 robberies, but acquitted him of the March 15 robbery. On the evening of May 16 and early morning hours of May 17, police arrested Glen Milton and Alston in connection with the robberies. In properly-conducted lineups conducted on May 17, several workers at the Rite Aid store identified one or both men as the perpetrators of the robberies.

Prosecutors introduced testimony that Diane Dorsey, with whom Alston shared an apartment, reported to police on the morning of May 16 that she had been the victim of a carjacking. Dorsey told a detective that three men had jumped into her car, asked her to drive them around, and then stolen her chain necklace. The detective, who found the story incredible, inspected Dorsey's car and found food stamps and Rite Aid money orders; the robbers had stolen such items from Rite Aid that morning. After discovering that Dorsey was on parole and lived with Alston, the detective returned to interview Dorsey again. This time he falsely told Dorsey that the police had footage of the intersection where the carjacking had allegedly occurred, at which point Dorsey "changed her story." The detective then went to an address where he found and arrested Milton.

Alston contends that the testimony that the prosecutor next elicited from the detective about Milton violated his rights under the Confrontation Clause. The detective testified that he arrested Milton after his second interview with Dorsey about the carjacking story. He then testified, over defense counsel's objection, that he had a conversation with Milton. After a few questions about timeframe, the prosecutor restated the detective's earlier testimony that he had gone "somewhere else" after the conversation with Milton and asked where he had gone; the detective replied that he "returned to [Dorsey's apartment]." There, the detective went on, the police advised Dorsey that they were looking for Alston, who fled through a second-story window of the apartment to an adjacent abandoned house, where he was shortly found hiding under dirty clothes and garbage, and arrested.

A criminal defendant's Confrontation Clause rights are violated when the government introduces a non-testifying co-defendant's confession implicating the defendant. See Bruton v. United States, 391 U.S. 123 (1968). This Court has also held, although the Supreme Court has not addressed the question, that "testimony that indirectly includes an accusation against the defendant may violate the Confrontation Clause even if the testimony is not a direct reiteration of the accusatory assertion." Ryan v. Miller, 303 F.3d 231, 248 (2d Cir. 2002); see also Mason v. Scully, 16 F.3d 38, 42-45 (2d Cir. 1994). For example, in Ryan, the prosecution introduced testimony that a police officer interrogating the defendant received a call from another officer who was simultaneously interrogating another suspect; upon receiving the call, officers read the

4

defendant his rights. 303 F.3d at 242. On these particularly egregious facts, the court found that the testimony violated Ryan's clearly-established Confrontation Clause rights, because the testimony amounted to an implicit out-of-court accusation by the co-defendant.

Alston argues that his Confrontation Clause rights were similarly violated by the detective's testimony, and that his attorney's failure to object to the testimony therefore constituted ineffective assistance of counsel. The detective testified that he had a "conversation" with Milton, after which he had gone somewhere else. After a few unrelated questions establishing the length of time between his visits to Dorsey's house, he was again asked if following the "conversation," he had gone elsewhere, and answered that he had gone to Dorsey's apartment. Jurors might have inferred, Alston argues, that police went to Dorsey's apartment because Milton had identified Alston as an accomplice.

It is not at all clear to us that Alston's attorney was deficient in not objecting to this testimony, which was more attenuated than in Mason and Ryan. However, even assuming that Alston's attorney should have objected to this testimony, and that an objection would have resulted in the exclusion of the testimony about the detective's contact with Milton, Alston nevertheless cannot show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Lynn v. Bliden, 443 F.3d 238, 247 (2d Cir. 2006), citing Strickland, 466 U.S. at 668, 694; see also Harrington v. Richter, 131 S.Ct. 770, 792

5

(2011) (prejudice prong requires showing that it is "'reasonably likely' the result would have been different"), quoting Strickland, 466 U.S. at 696. The lack of prejudice is supported by two observations: first, the implicit accusation was sufficiently unclear that the jury may well not even have noticed it; and second, even if the jury did infer that Milton had implicated Alston, so much other evidence supported the verdict that it is not reasonably likely that removing the tainted evidence would have changed their unanimous guilty verdict.

First, it is not at all clear that the jury engaged in the "lengthy reasoning process" necessary to conclude that Milton had implicated Alston. Quartararo v. Hanslmaier, 186 F.3d 91, 99 (2d Cir. 1999) (internal quotation marks omitted) (rejecting claim of inferential Bruton error). Unlike the Mason and Ryan questioning, which was deliberately designed to bring a forbidden out-of-court accusation to the jury's attention, the line of questioning here may have been simply clumsy, and the jury may well have failed to catch the possible inference. Furthermore, in contrast to the Mason and Ryan cases, the prosecutor here did not call attention in summation to the testimony linking the interview of Milton to the Alston arrest.

Second, as was not the case in Mason and Ryan, the implicit accusation of which Alston complains was at most a peripheral component of a strong prosecution case. The center of the case against Alston was the eyewitness testimony, which is entirely independent of the challenged indirect statement of Milton. Four eyewitnesses who had identified Alston in properly-conducted lineups within a day of the last robbery testified

6

at trial, including one who was still able to identify him in court years later. In addition to the eyewitness testimony, jurors also heard of Alston's flight from arrest, and learned that the car belonging to Dorsey, with whom Alston was living at the time, contained Rite Aid money orders and food stamps, which corresponded to items taken in the third robbery. The jurors also heard of Dorsey's implausible carjacking story, which they could reasonably infer had been designed as cover against the risk that the robbers had been seen escaping the scene in her car.

Alston makes much of the fact that the jury convicted him only for the two May robberies, which were committed by two men, and acquitted him of the March robbery, which was committed by a single individual. He argues that the jury must have found Milton's implication of Alston to be the critical piece of evidence allowing them to convict for the May robberies. But the government's case regarding the March crime was significantly weaker than for the May robberies. Only a single witness of the four presented at trial identified Alston as the March robber, and the May lineups occurred two months after that crime, but in the immediate aftermath of the second May robbery. The other three witnesses testified only about the May robberies. The March robber wore a ski mask which he never removed; several witnesses saw the May robbers' faces. Moreover, there was no evidence of the March robbery comparable to the evidence found in Dorsey's car immediately after the May 16 robbery, as well as the close timing between her apparently fabricated carjacking complaint and that robbery. It is thus not

7

surprising that the jury found the case stronger as to the May robberies, without conjecture that it relied on an implicit hearsay assertion by the absent Milton.

For all of these reasons, the argument that the jury even noticed the forbidden implication is entirely speculative. Even if the jury did draw the improper inference of Milton's accusation, the remaining evidence was so strong that there is no reasonable probability that the jury would have acquitted Alston without the testimony about Milton's accusation. Alston thus cannot demonstrate that counsel's failure to object to the testimony made any difference in the jury's reasoning. Particularly in light of the substantial deference owed to the state court's determination that Alston did not receive constitutionally deficient assistance of counsel, we cannot hold that that determination was an unreasonable application of <u>Strickland</u>.

For the foregoing reasons, the district court's denial of the petition for a writ of habeas corpus is AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

8