# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
June 24, 2020

Lyle W. Cayce
Clerk

No. 18-31166

MARCUS VERNELL COLEMAN,

Petitioner–Appellant,

versus

DARREL VANNOY, Warden, Louisiana State Penitentiary,

Respondent–Appellee.

Appeal from the United States District Court
for the Western District of Louisiana

Before SMITH, HIGGINSON, and ENGELHARDT, Circuit Judges.
JERRY E. SMITH, Circuit Judge:

A Louisiana jury convicted Marcus Coleman of armed robbery with a firearm. Coleman thinks that his trial lawyer rendered ineffective assistance in failing to object to testimony that supposedly violated the Confrontation Clause. He seeks a writ of habeas corpus on that basis. The state courts denied relief, and the district court did too. Because the state adjudication was reasonable, we affirm.

No. 18-31166

I.

A.

The victim, Jill Dozart, testified to the events as follows: While driving to a restaurant, she stopped at a drive-through ATM, where she noticed a gray Saturn in front of her whose passengers were "messing with the machine." Dozart withdrew cash, continued to the restaurant, parked, and started walking toward it. She heard someone, approaching quickly from behind, who grabbed her, at which point she "[f]reaked" and started screaming and kicking, hoping someone in the restaurant might hear.

The assailant—a man—displayed a gun and threatened to shoot if she did not quiet down. He ordered her to walk away from the restaurant along an adjacent street. The assailant followed, continuing to struggle with her as he tried to dig through her purse.

Finally, a car drove up and stopped next to them. It appeared to be a gray Saturn. The car's occupants yelled at the assailant to get inside and leave. Dozart started resisting again. The assailant wrested away Dozart's purse—which included her cell phone—and jumped into the car, which drove off.

Dozart memorized the license plate as the car sped away. She ran back to the restaurant and found her friends, who called the police. Dozart described the robber as a black male, about 5'7", with longer hair. She gave police the number for her pilfered phone.

Shortly after the robbery, while at home with her husband, Dozart saw a picture on television of the person who looked like her assailant. She told her husband that the man was the robber. The news program stated that the man was a suspect in the robbery. At trial, the husband identified Coleman, sitting in the courtroom, as the person whose image had been displayed.

2

No. 18-31166

At trial, Dozart also identified Coleman as the robber. She stated that, at the time of the robbery, Coleman's hair had been longer and arrayed in "little pieces." She also recalled that Coleman's hair had appeared longer in the picture on television than it was on the day of trial.

B.

Dozart's testimony was not the only evidence that linked Coleman to the crime. The detective who investigated—David Rupf—testified about his probe, and, in so doing, summarized statements that another suspect, Hillary Bonita, had made to him, some of which inculpated Coleman as the robber. The defense lawyer's failure to object to those statements is the basis for this appeal.

After Rupf learned that Dozart's phone had been stolen, Rupf called it. After multiple tries, Hillary picked up. Rupf eventually met with Hillary, who stated that she had purchased the phone from Coleman, describing him as a "black male, light build, with long bushy hair." A confidential informant verified that Rupf would "know" Coleman "by his hair." Officers confirmed that the phone was the one stolen from Dozart. Later, Hillary agreed to provide a statement to police and to view a photographic lineup, in which she correctly identified Coleman.

In her statement—as Rupf summarized it—Hillary admitted that she had been present with Coleman the night of the robbery. She said that she, Coleman, and another man had gone to Lake Charles in a gray-colored car. They drove around until they saw "a white female" in the restaurant parking lot. Coleman told the other man to stop the car and let him out. After Coleman exited, the man drove the car around the block.

As the car returned, Hillary saw Coleman pulling Dozart to the road as Dozart fought for her purse or for something. Hillary yelled at Coleman to get

3

No. 18-31166

into the car, but Coleman continued to struggle with Dozart.  Eventually, Coleman secured Dozart's purse and jumped into the car.

Rupf also testified that records showed that after the robbery, Dozart's stolen phone had been used to call a residence affiliated with Coleman.  And Rupf's investigation independently confirmed that Coleman had been in a silver Saturn that night.

## C.

The jury convicted Coleman of armed robbery with a firearm.  The conviction was affirmed, *State v. Coleman*, No. 10-301, 2010 WL 3903831 (La. App. 3d Cir. Oct. 6, 2010), and the Louisiana Supreme Court denied review.

Coleman applied for state post-conviction relief.  Among other claims, he asserted that his lawyer's failure to challenge Rupf's testimony about Hillary's out-of-court, inculpatory statements amounted to ineffective assistance of counsel ("IAC"), because the testimony violated the Confrontation Clause of the Sixth Amendment and was supposedly central to the state's case.

The trial court denied relief.  The court of appeal, over a dissent, vacated and remanded for a new trial.  The Louisiana Supreme Court reversed, reinstating the denial.  The court held that, even if counsel was deficient, Coleman had not established prejudice.

Coleman petitioned for federal habeas.  The district court, accepting the magistrate judge's recommendation, denied and dismissed with prejudice. This court granted a certificate of appealability limited to whether the lawyer was ineffective in failing to object to Rupf's testimony that summarized the inculpatory statements.

## II.

In addressing a denial of habeas relief, we review the district court's

4

No. 18-31166

factual findings for clear error and legal issues *de novo*.  *United States v. Gonzalez*, 943 F.3d 979, 982 (5th Cir. 2019), *petition for cert. filed* (U.S. Feb. 28, 2020) (No. 19-7825).

## A.

Under *Strickland v. Washington*, 466 U.S. 668 (1984), Coleman "must show that counsel's performance was [1] objectively unreasonable and [2] prejudiced him." *Howard v. Davis*, 959 F.3d 168, 171 (5th Cir. 2020). We "strongly presume that the performance was good enough." *Id.*

To prove prejudice, "[i]t is not enough . . . that the errors ha[ve] some conceivable effect on the outcome of the proceeding." *Washington*, 466 U.S. at 693.  Instead, there must be "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Andrus v. Texas*, No. 18-9674, 2020 U.S. LEXIS 3250, at *24 n.5 (U.S. June 15, 2020) (per curiam).  "A reasonable probability is a probability sufficient to undermine confidence in the outcome," *Harrington v. Richter*, 562 U.S. 86, 104 (2011), for which "[t]he likelihood of a different result must be substantial," *Dorsey v. Stephens*, 720 F.3d 309, 321 (5th Cir. 2013).

## B.

"Surmounting [*Washington*'s] high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).  That is "doubly" true when AEDPA deference applies. *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009); *see* 28 U.S.C. § 2254(d).  We cannot grant relief unless, among other things, the state adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

For us to grant relief, "[t]he state court decision must be so lacking in

5

## No. 18-31166

justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (per curiam) (quotation marks removed). And "because the [*Washington*] standard . . . is a general [one], a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Richards v. Quarterman*, 566 F.3d 553, 561 (5th Cir. 2009).

### C.

We assume, without deciding, that a competent lawyer would have objected to Rupf's testimony about Hillary's out-of-court statements on the basis of confrontation.[1]  "The pivotal question is" thus "whether the state court's application of" *Washington*'s prejudice prong "was unreasonable." *Richter*, 562 U.S. at 101.  It was not.

There was other persuasive evidence linking Coleman to the robbery.

- After Dozart's phone was stolen, it was used to call a residence associated with Coleman.
- At trial, Dozart recounted in detail the attack, her assailant, and his appearance, and identified Coleman, sitting in the courtroom, as the perpetrator.
- Dozart's husband testified that when Coleman's picture appeared on TV, Dozart had immediately recognized Coleman as the robber.
- The husband identified Coleman in court as the person whose

---

[1] *See Skinner v. Quarterman*, 576 F.3d 214, 217 (5th Cir. 2009) ("If the petitioner fails to prove the prejudice component, the court need not address the question of counsel's performance."); *United States v. Wines*, 691 F.3d 599, 604 (5th Cir. 2012) (assuming without deciding that performance prong was met and affirming based on lack of prejudice).

picture had been shown on the television.

- Rupf's investigation revealed that, consistent with Dozart's memory, Coleman and his associates had been in a silver Saturn the night of the robbery.

That evidence easily proves that the state court's conclusion—no prejudice—was at least a reasonable one.[2]

Coleman points to cases that have found certain Confrontation Clause errors to be non-harmless because of a lack of evidence otherwise supporting the prosecution's case. *See, e.g.*, *United States v. Kizzee*, 877 F.3d 650, 662–63 (5th Cir. 2017). But the harmless-error doctrine differs in important ways from IAC prejudice. In the former, it is the state's burden to prove harmlessness beyond a reasonable doubt[3]; in the latter, it is the defendant's burden to prove a reasonable probability that the result would have been different.[4]

Moreover, unlike confrontation errors, IAC claims "by their nature require a showing of prejudice with respect to the trial as a whole." *Delaware v. Van Arsdall*, 475 U.S. 673, 680 (1986). Confrontation has no *inherent* trial-

---

[2] *See, e.g.*, *Paredes v. Quarterman*, 574 F.3d 281, 287–88 (5th Cir. 2009) (per curiam) (holding that, even assuming that lawyer ineffectively failed to object to testimony barred by the Confrontation Clause, the defendant did not prove prejudice, because there was plenty of other evidence that linked the defendant to the crime); *Carson v. Collins*, 993 F.2d 461, 466 (5th Cir. 1993) (holding that there was no prejudice to the defendant from the lawyer's failure to object to certain evidence).

[3] *United States v. Alvarado-Valdez*, 521 F.3d 337, 341 (5th Cir. 2008).

[4] *See Washington*, 466 U.S. at 694; *see also* Daniel J. Capra & Joseph Tartakovsky, *Why* Strickland *Is the Wrong Test for Violations of the Right to Testify*, 70 WASH. & LEE L. REV. 95, 141–42 (2013) (articulating several major differences between harmless-error analysis and IAC prejudice); Richard L. Gabriel, Comment, *The* Strickland *Standard for Claims of Ineffective Assistance of Counsel: Emasculating the Sixth Amendment in the Guise of Due Process*, 134 U. PA. L. REV. 1259, 1278 (1986) (criticizing *Washington* on the ground that "placing the burden of proving prejudice on the defendant . . . effectively shifts the burden of proving harmless error from the state to the defendant").

outcome prejudice component.[5]  Instead, a court asks whether a confrontation error was innocuous only after finding an error.  *See Van Arsdall*, 475 U.S. at 681–82; *United States v. Jones*, 930 F.3d 366, 379 (5th Cir. 2019).

That is not to say that harmless-error precedents are categorically irrelevant.  For the same facts that pertain to harmless error often also relate to *Washington* prejudice.[6]  After all, defined at a high level of generality, both doctrines ask the same question:  Did the mistakes affect the outcome?[7]

In any event, in the cases that Coleman cites, "the defendant's involvement was hotly contested, and the prosecution depended on out-of-court testimony to identify the defendant as a participant in the crime."[8]  Here, however, there was plenty of other evidence linking Coleman to the offense, as detailed above.[9]

---

[5] *See Van Arsdall*, 475 U.S. at 680 (contrasting IAC with confrontation on the ground that IAC has an inherent prejudice inquiry); *see also id.* ("It would be a contradiction in terms to conclude that a defendant denied any opportunity to cross-examine the witnesses against him nonetheless had been afforded his right to confrontation because use of that right would not have affected the jury's verdict." (cleaned up)).

[6] *See Dorsey*, 720 F.3d at 321 ("[T]he [state court] could have reasonably concluded that any Confrontation Clause violation was not harmful error for the same reasons that the federal district court concluded that any such error did not result in prejudice."); *Paredes*, 574 F.3d at 288 n.6.

[7] *See* Capra & Tartakovsky, *supra*, at 141; *Alvarado-Valdez*, 521 F.3d at 341 (harmless error); *Washington*, 466 U.S. at 694 (IAC prejudice).

[8] *United States v. Sarli*, 913 F.3d 491, 496–97 (5th Cir.), *cert. denied*, 139 S. Ct. 1584 (2019); *see Kizzee*, 877 F.3d at 662–63; *United States v. Duron-Caldera*, 737 F.3d 988, 996–97 (5th Cir. 2013); *United States v. Jackson*, 636 F.3d 687, 697 (5th Cir. 2011); *United States v. Rodriguez-Martinez*, 480 F.3d 303, 308 (5th Cir. 2007) (per curiam); *Favre v. Henderson*, 464 F.2d 359, 365–66 (5th Cir. 1972).

[9] *See Westley v. Johnson*, 83 F.3d 714, 722–23 (5th Cir. 1996) (concluding that failure to object to certain evidence did not prejudice the defendant, given other evidence of guilt); *cf. Lyons v. McCotter*, 770 F.2d 529, 532 n.5 (5th Cir. 1985) (noting that there was prejudice only because the state had little evidence outside that which the lawyer should have objected to—the state had "offered no corroborati[on]," and two witnesses had testified that the defendant had been elsewhere at the time of the robbery).

No. 18-31166

Coleman's best case is *Mason v. Scully*, 16 F.3d 38, 45 (2d Cir. 1994), in which the defendant was prejudiced by his lawyer's failure to object to testimony that violated confrontation. But there, unlike here, it "was hotly contested"[10] whether the eyewitnesses to the offense had correctly identified the defendant as the perpetrator. *Id.* And the eyewitnesses did not "specify any distinguishing characteristic that would have permitted them to identify" the defendant. *Id.*

Dozart, by contrast, identified Coleman unequivocally both on the television program and during trial, noting his long hair as a distinguishing feature. But the defense failed to cast doubt on those identifications. Defense counsel asked Dozart only a few questions, on cross-examination, about her identifications, at the conclusion of which Dozart implored, "when somebody has you and you think you are fixing to die and your life is in their hands, you know. You don't forget." And, in any event, unlike the evidence in *Mason*, *id.*, there was plenty of other persuasive evidence implicating Coleman, such as the call from Dozart's stolen phone to a residence associated with Coleman.

Coleman suggests that it is problematic that in targeting him as a suspect, the police relied on Hillary's statements. He complains that, had Hillary never divulged, he might not have been arrested, let alone tried and convicted. But the Confrontation Clause certainly does not bar the police from using out-of-court accusations to investigate a suspect.[11] So any objection on such a theory would have been spurious.

---

[10] *Sarli*, 913 F.3d at 496.

[11] *See Barber v. Page*, 390 U.S. 719, 725 (1968) ("[C]onfrontation is basically a trial right."); *United States v. Morgan*, 505 F.3d 332, 338–39 (5th Cir. 2007) (per curiam).

No. 18-31166

III.

Coleman complains that the district court should have held an eviden-tiary hearing. Because Coleman is *pro se*, we will consider that argument, even though he first raises it in his reply brief.[12] "A district court may refuse an evidentiary hearing where there is not a factual dispute which, if resolved in the prisoner's favor, would entitle him to relief. Because that is the situation here, the court did not abuse its discretion[.]" *Norman v. Stephens*, 817 F.3d 226, 235 (5th Cir. 2016) (cleaned up).

\* \* \* \* \*

Because "the state court's application of the [*Washington*] standard was [ ]reasonable," *Richter*, 562 U.S. at 101, the denial of habeas relief and the denial of an evidentiary hearing are AFFIRMED.

---

[12] *See, e.g.*, *United States v. Reece*, 938 F.3d 630, 633 n.2 (5th Cir. 2019). Coleman includes other arguments in his reply brief that we cannot consider because they are outside the scope of the certificate of appealability. *See, e.g.*, *Simmons v. Epps*, 654 F.3d 526, 535 (5th Cir. 2011) (per curiam). These include Coleman's objections as to his lawyer's research into the evidentiary basis for Dozart's television identification, the strength of Dozart's mem-ory of Coleman's appearance based on the police report, and Hillary's alleged lies about one "Chris Williams."