United States v. Kendrick

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.   WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").   A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 14th day of September, two thousand twenty.

**PRESENT:**
> JOSÉ A. CABRANES,
> BARRINGTON D. PARKER,
> REENA RAGGI,
> *Circuit Judges.*

_____

**United States of America,**

*Appellee*,

v.                                                                            16-4286

**Pablo Plaza, AKA Plaza, AKA Plaza, Janine Plaza Pierce, AKA Jan, Edwin Negron, AKA E, Angelo Cruz, AKA Kubiak, Lance Plaza Pierce, Angelo Ocasio, Jeffrey Davis, Zavier Vazquez, Phillip Barnes, AKA Cream, Matilda Delgado,**

*Defendants,*

**James Dean Kendrick, AKA JD,**

*Defendant-Appellant*.

_____

**FOR APPELLANT:**                                                    James Dean Kendrick, *pro se*,
                                                                                       Allenwood, PA.

**FOR APPELLEE:** Everardo A. Rodriguez, Assistant United States Attorney, for James P. Kennedy, Jr., United States Attorney, Buffalo, NY.

Appeal from a judgment of the United States District Court for the Western District of New York (Frank P. Geraci, Jr., *Chief Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court is **AFFIRMED**.

Appellant James Dean Kendrick ("Kendrick"), proceeding *pro se*, was convicted after a jury trial of engaging in a continuing criminal enterprise, possessing heroin with intent to distribute, using a premises for drug dealing, possessing and discharging a firearm in furtherance of a drug trafficking crime, and murdering two men, Francisco Santos and Ryan Cooper, while engaged in a drug crime. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal. We address Appellant's principal challenges to his conviction and sentence in turn.

## I.  Alleged Subornation of Perjury before the Grand Jury

A district court's decision whether to dismiss an indictment because of Government misconduct is reviewed for abuse of discretion. *See United States v. Broward*, 594 F.2d 345, 350–51 (2d Cir. 1979). We have held that "[d]ismissal of an indictment following a conviction is an extraordinary remedy," *United States v. Lombardozzi*, 491 F.3d 61, 79 (2d Cir. 2007) (internal quotation marks omitted), "warranted only where the prosecutor's conduct amounts to a knowing or reckless misleading of the grand jury as to an essential fact," *United States v. Bari*, 750 F.2d 1169, 1176 (2d Cir. 1984).

Kendrick argues that the Government misled the grand jury by presenting witness testimony that placed his codefendant, Pablo Plaza, at the scene of the Santos murder, though Plaza was in jail the night this murder occurred. Kendrick maintains that the fact of Plaza's incarceration "raises doubt about" the theory the Government advanced to satisfy the drug nexus requisite for the murder, *i.e.*, that Santos was killed for stealing money and drugs from Plaza.[1] But, as the

---

[1] Kendrick's convictions in connection with the Santos and Cooper murders were for violations of 21 U.S.C. § 848(e)(1)(A), which punishes "any person engaging or working in furtherance of a continuing criminal enterprise, or any person engaging in an offense punishable under [21 U.S.C. §] 841(b)(1)(A) . . . who intentionally kills or counsels, commands, induces, procures, or causes the intentional killing of an individual and such killing results." Conviction under this provision "requires a 'substantive,' and not merely 'temporal,' connection between a charged drug offense and a charged killing." *United States v. Aguilar*, 585 F.3d 652, 660 (2d Cir. 2009).

District Court concluded, there is no evidence that the Government knowingly or recklessly attempted to mislead the grand jury. The Government stated that it relied upon a jail record showing that Plaza was not booked into the jail until the day after the Government believed the murder to have taken place, not realizing that the jail occasionally booked inmates on the morning after their arrival. Moreover, the Government also presented evidence to the grand jury that Plaza was *not* at the murder scene. Finally, the trial jury was accurately informed that Plaza was incarcerated when Santos was murdered and, nevertheless, was persuaded beyond a reasonable doubt that Santos's murder was drug-related. Thus, any grand jury error by the Government about Plaza's status at the time of the Santos murder does not warrant the "extraordinary remedy" of dismissal. *See Lombardozzi*, 491 F.3d at 79; *see also United States v. Eltayib*, 88 F.3d 157, 173 (2d Cir. 1996) (rejecting contention that "indictment must be dismissed for prosecutorial misconduct before the grand jury" because "a guilty verdict by a petit jury remedies any possible defects in the grand jury indictment" (citing *United States v. Mechanik*, 475 U.S. 66, 72–73 (1986)).

## II.     Evidentiary Challenges

"We review a district court's evidentiary rulings under a deferential abuse of discretion standard, and we will disturb an evidentiary ruling only where the decision to admit or exclude evidence was manifestly erroneous." *United States v. Litvak*, 889 F.3d 56, 67 (2d Cir. 2018) (internal quotation marks omitted). Moreover, even if we find that the District Court abused its discretion, we will not reverse if the error made was harmless. *United States v. Mercado*, 573 F.3d 138, 141 (2d Cir. 2009).

Kendrick argues that the District Court wrongly admitted impermissible hearsay statements of several of his codefendants and co-conspirators. We conclude that the District Court did not abuse its discretion in admitting these statements, which were properly received as exceptions or exemptions to the general rule that hearsay is not admissible. *See* Fed. R. Evid. 801(d)(2)(E) (excluding from the definition of hearsay statements made by a co-conspirator in furtherance of the conspiracy), 804(b)(3) (providing circumstances under which hearsay statements against interest are admissible); *see also United States v. Maldonado-Rivera*, 922 F.2d 934, 961–62 (2d Cir. 1990) (stating that admissibility as a co-conspirator statement does not require that the conspiracy advanced by the statement be charged).

First, Kendrick identifies the testimony of a police officer who interviewed Santos prior to his murder as hearsay. But that officer did not testify about what Santos told him; he testified about the actions Santos took after the interview. Because the officer did not relay to the jury any statement made by the decedent, his testimony was not hearsay. *See* Fed. R. Evid. 801(c) (defining hearsay as "a statement that . . . the declarant does not make while testifying at the

current trial or hearing" but that "a party offers in evidence to prove the truth of the matter asserted in the statement").[2]

Second, Kendrick identifies Sandra Cooper's and Holly Ocasio's testimony as hearsay. Sandra Cooper testified that Ryan told her Kendrick would pay her to help cover up Santos's grave site, which had become partially unearthed and, further, told her that Santos had been killed "because he was gonna rat on [Kendrick's] brother Paul." App'x 343. These statements were admissible as co-conspirator statements in furtherance of the charged narcotics conspiracy.[3] Ocasio testified primarily about statements that "Plaza 76," a codefendant and co-conspirator who pled guilty prior to trial, made to Ryan Cooper in Ocasio's presence, including that Plaza 76, Kendrick, and others killed and buried Santos. These statements also qualify as co-conspirator statements. *See United States v. Mulder*, 273 F.3d 91, 103 (2d Cir. 2001) (deeming admissible under Fed. R. Evid. 801(d)(2)(E) "statements between co-conspirators that . . . inform each other as to the progress or status of the conspiracy" (internal quotation marks omitted)); *Maldonado-Rivera*, 922 F.2d at 958–59 (deeming admissible under Fed. R. Evid. 801(d)(2)(E) statements that "provide reassurance, or seek to induce a coconspirator's assistance, or serve to foster trust and cohesiveness").

Finally, Kendrick also challenges Daniel Young's testimony, as well as recordings of conversations between Young and Plaza 76, as inadmissible hearsay. But the testimony and the recordings concerned statements made by Plaza 76 that were both in furtherance of the narcotics conspiracy and against Plaza 76's penal interest—namely, that Kendrick paid him in cocaine to help him kill Ryan Cooper, and, *inter alia*, that the conspirators had "never got[ten] busted for . . . homicides" and possessed "every drug you could think of." *See* Gov't App'x 109–12.

## III.    *Bruton* challenge

---

[2] We have recognized that "testimony need not be explicit to qualify as hearsay," *Ryan v. Miller*, 303 F.3d 231, 248 (2d Cir. 2002), and, in the related Confrontation Clause context, we have "'condemned practices designed to circumvent [Confrontation Clause] principles by asking a witness what he *learned* from an out-of-court declarant,' as opposed to asking what an out-of-court declarant *said*," *id.* at 249 (emphasis in original) (quoting *Mason v. Scully*, 16 F.3d 38, 43 (2d. Cir. 1994)); *see also United States v. Check*, 582 F.2d 668, 679 (2d Cir. 1978) (finding impermissible hearsay where "the out-of-court statements uttered by [the declarant]" were "audaciously introduced through the artifice of having [a detective] supposedly restrict his testimony to his half of his conversations with [the declarant]"). Even if the police officer's testimony here contained any implicit statements from Santos, we would identify no error because the statements would be admissible "to explain the actions of the police officer[]" after interviewing Santos, and not for the truth of the matters Santos relayed to the officer. *See United States v. Gilliam*, 994 F.2d 97, 103 (2d Cir. 1993).

[3] Alternatively, the statements were admissible as statements in furtherance of an uncharged conspiracy involving Santos's murder. *See Maldonado-Rivera*, 922 F.2d at 961–62.

Kendrick argues that the District Court erred when it failed to sever his trial from that of Plaza-Pierce because her inculpatory statement to police also implicated him.

A *Bruton* challenge to a redacted confession is "analyzed by reference to two questions: (1) did the redacted statement give any indication to the jury that the original statement contained actual names, and (2) did the statement standing alone . . . otherwise connect co-defendants to the crimes." *United States v. Jass*, 569 F.3d 47, 58 (2d Cir. 2009) (omission in original and internal quotation marks omitted).

Applying this test, we find that Plaza-Pierce's redacted confession runs afoul of neither consideration. The replacement terms did not obviously suggest to the jury that actual names were omitted. Moreover, the statement standing alone does not connect Kendrick to the crimes. Kendrick further argues that the jury instruction regarding the statement violated *Bruton*. But the court only informed the jury that some material had been redacted from the statement and that the confession should be considered as evidence only against Plaza-Pierce. The court's jury instruction did not state that names were redacted. Accordingly, the District Court did not violate *Bruton* by refusing to sever the trial and by admitting the statement.

Similarly, Kendrick challenges the Government's opening statement that the jury would "hear admissions made by Janine Plaza-Pierce to the police and to her cousin, Laurie Cooper, who will testify in this case wherein she admitted how she helped her sons James Kendrick and Pablo Plaza and others take Francisco Santos to the Indian Reservation that night." While Kendrick frames this challenge as a prosecutorial misconduct claim, he relies on *Brown v. Superintendent Greene SCI*, 834 F.3d 506, 519 (3d Cir. 2016).[4] In *Brown*, the Third Circuit found a *Bruton* error when, in closing arguments, the prosecutor's statements effectively "negate[d] the redactions." *Id.* at 518–519. We find that *Brown* is distinguishable from this case. Unlike statements in a closing argument that strip away the redactions in a statement already introduced into evidence, here no evidence was introduced at the time of the prosecutor's statements. Accordingly, there were no redacted statements before the jury for the prosecutor to negate. Further, the prosecutor's statement accurately described the evidence: Plaza-Pierce made a confession to law enforcement and her admissible statements to Laurie Cooper implicated Kendrick.

---

[4] The claim also fails on the traditional test for prosecutorial misconduct. A prosecutor's remarks, even if improper, are "ground for reversal only if the statements, viewed against the entire argument before the jury[,] deprived the defendant of a fair trial." *United States v. Helmsley*, 941 F.2d 71, 96 (2d Cir. 1991) (internal quotation marks omitted). As Kendrick's counsel at trial herself acknowledged, the allegedly offending statement occurred at the outset of a lengthy trial, and was unlikely to stick in jurors' minds and prejudice Kendrick—particularly after the District Court's efforts to cure any error, efforts Kendrick's counsel stated "could remedy the situation" and "would suffice." *See* App'x 144.

5

## IV.     Jury Instructions

Kendrick raises a series of challenges to the jury instructions on *Pinkerton* liability and aider and abettor liability.

As to *Pinkerton* liability, Kendrick contends that the District Court constructively amended the indictment by instructing the jury that it could convict him of the drug-related murder counts on a *Pinkerton* theory. To establish such an amendment, Kendrick "must demonstrate that either the proof at trial or the trial court's jury instructions so altered an *essential element* of the charge that, upon review, it is uncertain whether the defendant was convicted of conduct that was the subject of the grand jury's indictment." *United States v. Dove*, 884 F.3d 138, 146 (2d Cir. 2018) (internal quotation marks omitted and emphasis in original). We typically will not find a constructive amendment where "the defendant was given notice of the core of criminality to be proven at trial." *United States v. Ford*, 435 F.3d 204, 216 (2d Cir. 2006) (internal quotation marks omitted). That "'core of criminality' . . . involves the essence of a crime, in general terms; the particulars of how a defendant effected the crime falls outside that purview." *United States v. D'Amelio*, 683 F.3d 412, 418 (2d Cir. 2012).

Here, the grand jury charged Kendrick and his co-conspirators with the murders of Santos and Cooper in the course of a drug crime. They also charged that the murders were done in violation of 18 U.S.C. § 2, which provides that anyone who "aids, abets, counsels, commands" or "willfully causes" another to commit a crime against the United States is punishable as a principal.

Although the indictment does not expressly assert liability on a *Pinkerton* theory, the court's *Pinkerton* instruction does not amount to a constructive amendment. *Pinkerton* provides that once a criminal conspiracy is joined a conspirator becomes liable for the foreseeable substantive offenses of co-conspirators committed in furtherance of the conspiracy. *Pinkerton v. United States*, 328 U.S. 640, 647 (1946). The indictment charged that the murders were committed in the course of the drug trafficking conspiracy, and it provided that the murders could be based on a theory of vicarious liability. Conviction on a *Pinkerton* theory does not alter "the essence of [the] crime here," but amounts only to "the particulars of how [Kendrick] effected th[at] crime." *D'Amelio*, 683 F.3d at 418.[5]

As to aiding and abetting liability, Kendrick urges this Court to overturn its precedent in *United States v. Walker*, 142 F.3d 103, 113 (2d Cir. 1998) (holding that a defendant may be held

---

[5] Moreover, Kendrick was on notice that the Government would argue a *Pinkerton* theory and seek a corresponding instruction. In the Government's pretrial memorandum—filed about three months prior to commencement of trial—the Government specifically asserted that the defendants were liable under *Pinkerton* and that the jury should be so charged.

liable as an aider or abettor to an offense under 21 U.S.C. § 848(e)), arguing that the repeal of § 848(g)–(p) demonstrates that Congress intended to narrow liability for violations of § 848(e). To the contrary, the repeal of other sections of § 848 demonstrates that Congress considered the statute and chose to leave subsection (e) unchanged. In *Walker*, we held that liability under the statute attached to aiders and abettors of murder because, unlike in other subsections, subsection (e) expressly provided for such liability. 142 F.3d at 113–14. Accordingly, because the statutory basis for our prior decision remains unchanged, we decline the invitation to revisit *Walker*.

## V.     Ineffective Assistance of Counsel

Kendrick raises ineffective assistance of counsel claims, but we have expressed a preference to hear claims of ineffective assistance of counsel on collateral review. *See United States v. Doe*, 365 F.3d 150, 152 (2d Cir. 2004); *see also Massaro v. United States*, 538 U.S. 500, 504–05 (2003). We express no view as to the merits of these claims, and Kendrick may, if he wishes, present his claim of ineffective assistance of counsel in a properly filed 28 U.S.C. § 2255 motion.

We have considered all of Appellant's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the District Court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court